## BORDEN'S CONDENSED MILK CO. v. HORLICK'S MALTED MILK CO. et al.

(District Court, E. D. Wisconsin. July 24, 1913.)

TRADE-MARKS AND TRADE-NAMES (§ 67*)—UNFAIR COMPETITION—WHAT CONSTITUTES.

A controversy between the manufacturers of two articles, which concededly may properly be designated by the same name, as to which is the "original and only genuine" article of that name, does not involve any property rights which may be determined by a court of equity and protected by injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 78; Dec. Dig. § 67.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Borden's Condensed Milk Company against the Horlick's Malted Milk Company and others. On final hearing. Decree for defendants.

The bill charges unfair trade practices, and prays for an injunction. The complainant is a New Jersey corporation, for many years engaged in the manufacture of condensed, evaporated, and malted milks. Its business has become large and profitable, being carried on through numerous factories, in various states, and its products, particularly malted milk, have been widely marketed and sold. Such malted milk is a combination, in concentrated, dry, pulverulent form, of malted barley and malted wheat flour. The process of production is detailed in the bill.

The defendant Horlick's Malted Milk Company is a Wisconsin corporation, owned and controlled by the codefendants named, who are its officers and directors. Such parties will be referred to as the defendant. The corporation was originally known as Horlick's Food Company, and from about the year 1883 built up a large and profitable business in the manufacture of malted milk under a patent granted to the defendant William Horlick, which expired on June 5, 1900, by limitation.

The Elgin Milkine Company, a corporation, after the expiration of the patent referred to, commenced the manufacture of malted milk, having theretofore respected, during its lifetime, the patent referred to. The defendant Horlick's Malted Milk Company had designated its product under such patent as "malted milk." In or about the year 1902 it commenced a suit against the Elgin Milkine Company, seeking to restrain it from using the term "malted milk" as a designation of its product. Such suit was determined in favor of the defendant by a judgment of the United States Circuit Court of Appeals for the Seventh Circuit (120 Fed. 264, 56 C. C. A. 544), the court holding that, as the defendant Horlick's Malted Milk Company had attached the name "malted milk" to a patented product, such name, upon expiration thereof, passed with the patent to the public. The complainant has succeeded to the business and trade rights of said Elgin Milkine Company.

The complainant's case is thus further stated by counsel: "That at numerous places throughout the United States the defendant has widely and persistently advertised that it is the manufacturer of the original and only genuine malted milk, and has harassed the trade of the complainant by countless advertisements, statements by its salesmen and traveling agents, and by constantly alleging before the public, in medical journals, in circulars, in letters, and in newspaper and magazine advertisements, in signs placed in drug stores and in other public places of trade, upon blotters and leaflets, cards, and all manner of publications that the defendant was the producer of 'the original and only genuine malted milk.' That the defendant has abstracted or taken away the jars and ornamental receptacles labeled with the name of the complainant, which had been furnished and loaned by the complainant to its customers for use in dispensing or selling malted milk of complainant's production."

The defendant, in substance, admits the allegations of the bill respecting its claim of the origin of its manufacture of malted milk in the discovery of the process by the defendant William Horlick, also the origin and use of the term "malted milk," and admits the allegations respecting the claims that it has made, and makes, of its status as a manufacturer or producer of the *original and only genuine malted milk.*

The proofs of complainant were directed to establishing the history of manufacture of malted milk by it and its predecessor, the Elgin Milkine Company, and it claims that the process of malting milk was originally discovered by Von Liebig, a German chemist, and that the same product was used by Countess Von Ebersberg. It also introduced the testimony taken in the case of the herein defendant against the Elgin Milkine Company, above referred to, for the purpose of establishing that the defendant William Horlick in that case claimed that he was not the inventor of the product described and claimed in his patent; also proof that, in the High Court of Justice, Chancery Division, in England, in a suit prosecuted against said defendant William Horlick, the latter's English patent, substantially the same as the American

patent, had been annulled, because knowledge of the manufacture of malted milk, as therein described, was obtained from the complainant in that case.

There is considerable testimony describing the process of manufacture, and the chemical changes incident, or claimed to be incident, in the processes used in the manufacture of the products by the parties respectively. It is abundantly shown that the defendant has, as alleged in the bill, extensively advertised that it was the producer of "the original and only genuine malted milk." The defendant has also shown that in the trade the complainant has likewise claimed to produce the only genuine malted milk. The competition between the parties appears to have been keen, each making liberal claims respecting the merits of its own product, and each seems to have been active in cautioning the public to beware of imitations, etc.

Flanders, Bottum, Fawsett & Bottum, of Milwaukee, Wis., for complainant.

Lines, Spooner, Ellis & Quarles and Miller, Mack & Fairchild, all of Milwaukee, Wis., for defendants.

GEIGER, District Judge (after stating the facts as above). The case presents this situation: The parties have gone quite exhaustively into the history and method of manufacturing malted milk. It is conceded by each that the other manufactures and sells, rightfully, what is and may be designated as "malted milk." The controversy tendered by the complainant's bill and proofs is stated to be "whether the defendant, Horlick's Malted Milk Company, could claim to be the producer of the original and only genuine malted milk." This, it is further said, "forms the gravamen of complainant's bill of complaint, and the basis for the allegation and claim that the defendant has been guilty of unfair competition in so advertising, claiming, asserting, and giving out."

The question is therefore directly presented whether the claim of priority of original manufacture, and the extravagant and untruthful claim of a manufacturer or dealer that *his* goods are the original and only genuine, can be judicially determined to be tortious, constituting an invasion of the business and trade rights of another, to be restrained by injunction. It is urged that, when the defendant asserts to the trade that its product is the original and only genuine product, the necessary implication is that all others, including the complainant, are making an imitation, therefore a spurious and deleterious article. It is claimed in the case that the complainant's manufacture is according to a formula well known prior to the alleged discovery made by the defendant William Horlick, whereas the defendant seeks to establish that its formula is different, and different chemical processes are used, and that different chemical changes result. But each concedes that the other's product is malted milk.

Now, if each party is entitled to make and does make malted milk, is the claim by one that its product is the original, the only genuine malted milk, an invasion of the *property rights* of the other, because of the possible implied charge therein that the latter's is *not* original or genuine, when the method or formula for manufacture is not protected as a patent right, when any one has the right to pursue any formula of manufacture according to which the product may in fact be made? If A. discovers a formula for making a new product, the product,

when so made, may in a certain sense be said to be the "original" or the "only genuine." But, if later, by another formula, the same, or possibly a similar, product, which, as here, may rightfully be called by the same name, may be manufactured, it does not follow that the latter manufacturer, in advertising his product to be the "original," the "genuine," is invading the former's *property rights*. He may be making exaggerated and false claims, he may be ascribing to himself and his products virtues which neither possesses, but he has not taken anything from his rival, any more than one competitor may take from another in an appeal to the public. He has made no representation whereby his goods are taken as and for the goods of his rival, nor whereby the public is induced to believe that his goods possess qualities whose bestowal upon the goods rests with the rival, as a peculiar property right.

It is true, in a sense, that one who proclaims his product to be the "genuine," who cautions against "imitations," may injure his rivals. He may, in this way, impliedly slander and impute spuriousness. But, conceding such asseverations to be demonstrably false, what right has been invaded, other than the broad right which one may possess that another tell the truth, or that he shall not falsify? In the present case, complainant has the undoubted right to manufacture, according to a formula said to have been discovered by Liebig, what it maintains may rightfully be called "malted milk." Its right is not claimed to be exclusive, nor is it claimed that its product has been marketed or recognized by the public as possessing qualities attributable thereto because of the use of such formula; nor does it appear that it has made any appropriation of any right from whose invasion the defendants should, because of their conduct, be restrained. In endeavoring to define the scope of the principles of unfair competition, a recent writer says:

"If another definition of unfair business competition may be attempted, it may be said to be the use in business competition of rights, property, or powers, which may or may not ordinarily be susceptible of exclusive appropriation by one individual, in such a way as to injure another by misrepresentation, deceit, dishonesty, or fraud, and usually with intent so to do. Unfair competition, in the sense in which it is most often used, is a question of representation—representing one person's goods to be those of another, and similar false representations. In England the term 'passing off' is practically confined to this sort of unfair competition. The latter term is not used here. It is held in France that unfair competition may arise without confusion between merchandise or business concerns, as where a merchant attributes to himself qualities, title, or rewards which he never actually obtained for himself. This is the meaning of the term which is recognized here, now and then, by the public press, but not by courts." Sims, Unfair Business Competition, 29.

As indicated, there is nothing to show that complainant had any peculiar right, power, or property in respect of the manufacture of malted milk, which was either susceptible of being, or had in fact been, *exclusively appropriated by it* in such manufacture; and the case narrows down to this: Can it prevent the defendants from claiming for or ascribing to themselves or their product "qualities, titles, or rewards" which they may not actually possess or be entitled to? Take

an analogous case: Rival shopkeepers are engaged in selling a fabric which may be of foreign or domestic manufacture. The foreign fabric is concededly of better quality, and consequently in greater favor. One dealer sells only the foreign, the other only the domestic, fabric. Suppose the latter advertises or proclaims the article sold by him to be of foreign manufacture, and that his establishment is the only one so dealing in such fabric of "genuine foreign" manufacture; has he invaded or taken from his rival s property rights? It would seem not. His act consists in an attempt to deceive the public, and, while his rival may be injured, he is not deprived of any personal legal right. Both are in the competitive field, and, while each may guard his own rights against invasion by the other, neither can, by injunction, exercise a censorship or guardianship over the commercial morals of the other in respect of appeals to the public, which are not based upon a deprivation of something legally belonging to the one claiming injury.

That the doctrine of unfair trade, or unfair competition, has not been thus extended, is well illustrated by the case of American Washboard Co. v. Saginaw Manufacturing Co., 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609, where complainant, a manufacturer of aluminum faced washboards upon which the word "aluminum" was used, complained of the defendant's manufacture of washboards upon whose face the same word appeared, though the product was not in fact made of such metal, claiming that the public was thereby deceived into buying it as a genuine aluminum washboard. The court, in affirming a dismissal of the bill, because demurrable, said:

"It is doubtless morally wrong and improper to impose upon the public by the sale of spurious goods; but this does not give rise to a private right of action, unless the property rights of the plaintiff are thereby invaded. There are many wrongs which can only be righted through public prosecution, and for which the Legislature, and not the courts, must provide a remedy. Courts of equity, in granting relief by injunction, are concerned with the property rights of complainant. * * * Take the metal which is the subject-matter of the controversy in this case. Many articles are now being put upon the market under the name of aluminum, because of the attractive qualities of that metal, which are not made of pure aluminum, yet they answer the purpose for which they are made and are useful. Can it be that the courts have the power to suppress such trade at the instance of others starting in the same business who use only pure aluminum? There is a widespread suspicion that many articles sold as being manufactured of wool are not entirely made of that material. Can it be that a dealer who should make such articles only of pure wool could invoke the equitable jurisdiction of the courts to suppress the trade and business of all persons whose goods may deceive the public? We find no such authority in the books, and are clear in the opinion that, if the doctrine is to be thus extended, and all persons compelled to deal solely in goods which are exactly what they are represented to be, the remedy must come from the Legislature, and not from the courts."

So, too, in the recent case of Borden Ice Cream Co. v. Borden's Condensed Milk Co. (C. C. A.) 201 Fed. 510 (7th Circuit), complainant sought to restrain the defendant from the use of the word "Borden" in the corporate name of the defendant, claiming that by such use the defendant purposed trading upon the reputation of complainant's goods and products, and deceiving the public into the belief that its product is of the complainant's manufacture. It appeared, however,

that complainant had not entered the competitive field in the manufacture of commercial ice cream, and that therefore none of its rights were invaded. The word "Borden," not being susceptible of exclusive appropriation, had not in fact been appropriated by the complainant, so as to give it a secondary signification attached to any of its products similar to those purposed to be manufactured by the defendant. The Circuit Court of Appeals said:

"The question to be determined in every case of unfair competition is whether or not, as matter of fact, the name used by the defendant had come previously to indicate and designate the complainant's goods; or, to put it in another way, whether the defendant, as a matter of fact, is, by his conduct, passing off his goods as the complainant's goods, or his business as the complainant's business. It has been said that the universal test question in cases of this class is whether the public is likely to be deceived as to the maker or seller of the goods. This, in our opinion, is not the fundamental question. The deception of the public naturally tends to injure the proprietor of a business, by diverting his customers and depriving him of sales which otherwise he might have made. This, rather than the protection of the public against imposition, is the sound and true basis for the private remedy. That the public is deceived may be evidence of the fact that the original proprietor's rights are being invaded. If, however, the rights of the original proprietor are in no wise interfered with, the deception of the public is no concern of a court of chancery. Doubtless it is morally wrong for a person to proclaim, or even intimate, that his goods are manufactured by some other and well-known concern; but this does not give rise to a private right of action, unless the property rights of that concern are interfered with. The use by the new company of the name 'Borden' may have been with fraudulent intent; and, even assuming that it was, the trial court had no right to interfere, unless the property rights of the old company were jeopardized. *Nothing else being shown, a court of equity cannot punish an unorthodox or immoral, or even dishonest, trader; it cannot enforce as such the police power of the state.*"

The facts in the present case seem to be incapable of treatment under any different or more extended principle. Indeed, in view of the concession that each of the parties to this cause is making what may rightfully be termed malted milk, the whole controversy narrows down to the question whether complainant is entitled to have an adjudication that defendant is not the original manufacturer, nor the maker of the only genuine, but that the complainant likewise makes a genuine malted milk; that it can be and is made under the one as well as under the other method or formula. The real effect of the adjudication would be negative; that defendant is making claims respecting its product which are not true. In other words, the complainant claims that its manufacture is under a formula discovered and in use prior to the date of discovery by defendant of its formula; that its product is therefore both original and genuine malted milk. The defendant, asserting that its manufacture is according to a formula discovered and in use as disclosed in the proof, claims that its product is the original and only genuine malted milk. I am satisfied that the controversy which has thus arisen between the parties involves no property rights to be protected by injunction, and, for any determination of such controversy, parties must look to the public.

There is some proof that defendant has, by means of circular letters addressed to druggists and dealers, made not only a claim that its

own product is the original and only genuine, but the direct charge that the product marketed by complainant was not genuine, but imitation. There are in the record two letters of this character, but no further proof respecting the extent to which this practice was carried on. This phase of the case has not been pressed, either in the proof or upon the argument, and is therefore not considered of sufficient importance to determine the question whether by reason of such acts the complainant is entitled to injunctive relief, or whether it must be referred to its remedy at law for damages as for the publication of libel.

The conclusion is that the bill should be dismissed for want of equity.