### ARMSTRONG CORK CO. et al. v. RINGWALT LINOLEUM WORKS.

(District Court, D. New Jersey. August 28, 1916.)

1. TRADE-MARKS AND TRADE-NAMES ⬗78—SUIT FOR UNFAIR COMPETITION—RIGHT OF ACTION.

An action for unfair competition lies only when a property right of the complainant has been invaded, and the fact that a defendant makes an article and sells it under a false name or designation, and thus deceives the public, does not give a right of action to another, who makes the genuine article so designated, where it is not shown that defendant has represented or sold its product as that of complainant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 88; Dec. Dig. ⬗78.]

2. WORDS AND PHRASES—"LINOLEUM."

"Linoleum" is a floor covering made of oxidized oil combined with ground cork, wood flour, or similar vegetable material impressed upon a suitable back, usually of burlap.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Linoleum.]

In Equity. Suit by the Armstrong Cork Company and others against the Ringwalt Linoleum Works. On motion to dismiss bill. Motion granted.

McDermott & Enright, of Jersey City, N. J. (Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., of counsel), for plaintiffs.

Briesen & Schrenk, of New York City (Fritz v. Briesen and Hans v. Briesen, both of New York City, of counsel), for defendant.

RELLSTAB, District Judge. The Armstrong Cork Company, Thomas Potter & Sons Company, the George W. Blabon Company,

and the American Linoleum Manufacturing Company filed their bill against the Ringwalt Linoleum Works, charging it with unfair competition in the manufacture and sale of a composition floor covering.

[1] As summarized in the brief of complainant's counsel, the bill alleges that:

"Prior to December 19, 1863, Frederick Walton, was the inventor of a new floor covering or cloth, which was made from a composition of oxidized oil, ground cork, and wood flour impressed upon a suitable back. To this product he applied the name 'linoleum,' which was an arbitrary word, invented by him and first applied to his patented composition. Patents were secured in England and in the United States, which expired in 1877, when the manufacture of linoleum became open to the public, and the name was dedicated to public use as descriptive of the composition covered by the expired patents. Immediately upon the expiration of the patents, and from time to time thereafter, other manufacturers began and continued to produce linoleum, and described the product with the word 'linoleum.' For many years the word 'linoleum' has had a definite and specific meaning, and indicated and now indicates in the trade and to users and the public a product made in accordance with the expired patent of Frederick Walton; that is to say, linoleum is a floor covering made of oxidized oil combined with ground cork, wood flour, or similar vegetable material impressed upon a suitable back, usually of burlap, and means no other product.

"The plaintiffs are manufacturers of linoleum made always and only in the way and of the materials just described. Plaintiffs manufacture about 54 per cent. of the linoleum manufactured in the United States, and their product, known as and designated as 'linoleum,' has a high reputation, and is known to the public as a product made as just described, and as a meritorious, desirable, and durable article.

"The defendant knowingly, and with intent to deceive and to compete unfairly with the plaintiffs and other manufacturers and sellers of genuine linoleum, has placed upon the market an inferior, cheap, and spurious product, consisting of saturated felt paper, having designs painted upon the surface and deceptively contrived so as to resemble as nearly as possible genuine linoleum, and has advertised and sold such spurious product as linoleum, and as adapted to the purposes for which linoleum is intended, and has falsely and deceptively applied to such painted paper spurious product which it makes and sells the word 'linoleum' as the name or description of it, and falsely represented that said spurious product is linoleum, when the fact is, as is well known to defendant, that its product is not linoleum and cannot truthfully be so described, and that it is greatly inferior to genuine linoleum in cost, quality, and durability.

"Defendant's conduct has enabled and does enable dealers to sell, and such dealers do sell, this spurious product to buyers and users as linoleum, which it is not. Plaintiffs each and all are seriously damaged by defendant's unfair conduct."

The bill prays that the defendant be required to account for all profits derived by reason of its alleged misconduct, to pay the damages sustained by the plaintiffs, and that it be—

"perpetually enjoined and restrained from using in connection with the manufacture, advertisement, offering for sale, or sale of any product not linoleum, as known and understood and as herein described, the word 'linoleum,' from representing that the defendant's product which it sells as linoleum is linoleum, and from any and all untruthful use of the said word 'linoleum.'"

The defendant moves to dismiss the bill under equity rule 29 (198 C. C. A. xxvi, 115 C. C. A. xxvi), on the ground that it "does not state facts sufficient to constitute a cause of action." There is no allegation that the defendant, by its marks, labels, advertisements, or in other

ways, represents its goods as those manufactured by the plaintiffs, or that any person has been deceived by any act of the defendant into buying its goods as those of the plaintiffs. In other words, the defendant is not charged with palming off its goods as those of any other manufacturer.

The gravamen of the charge is that the defendant is making and vending a spurious article, and deceiving the public into buying it as genuine, with the result that the genuine article is discredited in reputation, and that the plaintiffs, who make and sell only the genuine article, are damaged. Such damages, however, are not the result of any attacks upon the property rights of the plaintiffs, and a right of action of the kind here pressed lies only when a property right has been invaded. Canal Company v. Clark, 13 Wall. (80 U. S.) 311, 20 L. Ed. 581; Goodyear India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 604, 9 Sup. Ct. 166, 32 L. Ed. 535; Brown Chemical Co. v. Meyer, 139 U. S. 544, 11 Sup. Ct. 625, 35 L. Ed. 247; Elgin National Watch Co. v. Ill. Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; and American Washboard Co. v. Saginaw Mfg. Co., 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609. At the close of the argument on such motion, the court so expressed itself.

At the request of plaintiffs' counsel, however, a decree dismissing the bill was not then entered, and they were given an opportunity to submit an additional brief in support of their contentions. This brief, as well as that furnished by them at the time of the argument, has been read, and the question considered anew, without change of opinion. A discussion of the cases cited by plaintiffs' counsel as holding a different view—to my mind distinguishable from the instant case— would be profitless, as the case of American Washboard Co. v. Saginaw Mfg. Co., supra, in my judgment, furnishes the law controlling the case at bar.

That case, as made by the bill, showed that plaintiff and defendant were manufacturers of washboards. The rubbing face of plaintiff's was of pure aluminum, while that of defendant's was made of a metal containing no aluminum whatever; that both branded their boards "aluminum," and so advertised them to the public; that the public was deceived into purchasing the defendant's boards as having a rubbing sheet made of aluminum, to the great and irreparable injury to plaintiff, as well as to the public. On demurrer the bill was dismissed. On appeal the dismissal of the bill was affirmed. The reasons given for such affirmance by Circuit Judge (now Mr. Justice) Day, speaking for the Circuit Court of Appeals, are so apt and convincing that extended quotations from his language are justified. He said:

"The bill * * * undertakes to make a case, not because the defendant is selling its goods as and for the goods of complainant, but because it is the manufacturer of a genuine aluminum board, and the defendant is deceiving the public by selling to it a board not made of aluminum, although falsely branded as such, being in fact a board made of zinc material; that is to say, the theory of the case seems to be that complainant, manufacturing a genuine aluminum board, has a right to enjoin others from branding any board 'aluminum' not so in fact, although there is no attempt on the part of such wrongdoer to impose upon the public the belief that the goods thus manufactured are the goods of complainant. We are not referred to any case going to the

length required to support such a bill. It loses sight of the thoroughly established principle that the private right of action in such cases is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of complainant. It is true that in these cases it is an important factor that the public are deceived, but it is only where this deception induces the public to buy the goods as those of complainant that a private right of action arises. * * * It is doubtless morally wrong and improper to impose upon the public by the sale of spurious goods; but this does not give rise to a private right of action, unless the property rights of the plaintiff are thereby invaded. There are many wrongs which can only be righted through public prosecution, and for which the Legislature, and not the courts, must provide a remedy. Courts of equity, in granting relief by injunction, are concerned with the property rights of complainant. * * *

"Take the metal which is the subject-matter of the controversy in this case. Many articles are now being put upon the market under the name of aluminum, because of the attractive qualities of that metal, which are not made of pure aluminum, yet they answer the purpose for which they are made and are useful. Can it be that the courts have the power to suppress such trade at the instance of others starting in the same business who use only pure aluminum? There is a wide-spread suspicion that many articles sold as being manufactured of wool are not entirely made of that material. Can it be that a dealer who should make such articles only of pure wool could invoke the equitable jurisdiction of the courts to suppress the trade and business of all persons whose goods may deceive the public? We find no such authority in the books, and are clear in the opinion that, if the doctrine is to be thus extended, and all persons compelled to deal solely in goods which are exactly what they are represented to be, the remedy must come from the Legislature, and not from the courts."

That case has been frequently cited with approval. See Daviess County Distilling Co. v. Martinoni (C. C.) 117 Fed. 186; American Wine Co. v. Kohlman (C. C.) 158 Fed. 830; Lowe Bros. Co. v. Toledo Varnish Co., 168 Fed. 627, 94 C. C. A. 83; Rathbone, Sard & Co. v. Champion Steel Range Co., 189 Fed. 26, 110 C. C. A: 596, 37 L. R. A. (N. S.) 258; Edward Hilker Mop Co. v. United States Mop Co., 191 Fed. 613, 112 C. C. A. 176; Borden Ice Cream Co. v. Borden's Condensed Milk Co., 201 Fed. 510, 121 C. C. A. 200; Borden's Condensed Milk Co. v. Horlick's Malted Milk Co. (C. C.) 206 Fed. 949.

The bill is dismissed, with costs.