## AINSWORTH v. GILL GLASS & FIXTURE CO.

### No. 9591.

District Court, E. D. Pennsylvania.
Dec. 13, 1938.

Robert M. Barr, of Philadelphia, Pa., and Harry Lea Dodson, of New York City, for plaintiff.

George F. Scull and John M. Cole, both of New York City, for defendant.

KIRKPATRICK, District Judge.

This is a suit for patent infringement, and for unfair competition in copying the form of the commercial article.

The patent in suit is U. S. No. 1,957,-192, May 1, 1934, to Ainsworth, the plaintiff, for an electric lighting fixture of the semi-indirect class. "Semi-indirect" describes a fixture in which some of the light is transmitted through a translucent bowl and the balance reflected from the ceiling.

1. In designing a fixture of this type, adapted to a powerful electric bulb, a thing to be avoided is a noticeable contrast between the light and the "surround." Such contrasts, all agree, are unpleasant and hurtful to the eyes, especially in drafting-rooms, libraries and the like where there are many lights and where glare may be aggravated by reflections from polished tables. Of course, the primary object is plenty of light—as much as possible—but you do not want a glaring bowl or an intensely bright spot on the ceiling. As the plaintiff puts it, "If we can make a fixture whose ability to control brightness is such that the surface liminosity of the reflector barely fades into the average brightness of the ceiling, we will have a panorama under which the eye is happy." This states the purpose of the patent. The plaintiff evolved the idea from a study of the lighting of nature, but I do not suppose that he means to say that his approach was original with him or that he was the first to realize that a light, diffused like sunlight, would be a good light. Unquestionably he has designed a fixture which is highly efficient, is attractive in appearance, and comes as near to getting the desired result as any to be found in the art. Whether doing so involved in his case more than ordinary engineering skill and artistic taste is the question upon which the validity of the patent depends.

All six claims of the patent are in suit. Claims 3, 5 and 6 are confined to the principal element of the fixture.

Claim 5 is: "A reflector for semi-indirect lighting comprising a shallow cone-shaped body of translucent material, the thickness of the body increasing from the periphery to the vertex."

Claim 3 states the same idea conversely and adds that the increase in thickness is gradual. Claim 6 states it a little differently, allowing for painting or pigmentation of the glass, as well as thickening, to reduce transmitted light.

Claims 1, 2, and 4 claim the bowl in combination with the other parts of the fixture and add the idea that the light bulb is to be positioned in proximity (claim 4) or in close proximity (claims 1 and 2) to the bowl.

There is no serious question as to infringement. Both in mechanical structure and in general appearance the defendant's fixture is a close copy of the plaintiff's commercial fixture, and is squarely within the claims of the patent. There may be some doubt whether the glass rosette which the defendant has applied to the apex of his cone comes within the "gradually" requirements of claims 3 and 4, but on the whole I think that it does. At any rate, there is no doubt whatever about the infringement of the other claims, and I make the finding that the patent, if valid, would be infringed by the defendant's structure.

All the elements claimed in combination are old in the art. There were plenty of cone-shaped bowls, and, as will appear, the conical shape is not even asserted by the plaintiff as a functional element. Shallow bowls of various shapes (including cones) were also not uncommon, as may be seen in the Ferlux and Druid bowls, and in some of the fixtures of the Swedish and German catalogues. The plaintiff concedes that it was also old to thicken bowls at the apex or nadir in order to reduce the amount of light transmitted when the light source was placed close to the bowl at that point. The plaintiff's own pressed-glass, helmet-shaped bowl, made for him by the Macbeth-Evans Company and sold in large quantities before his date of invention, also had this feature for this same purpose. I do not find in the prior art the precise combination of a shallow conical bowl with a thickened apex.

At first impression one would say that in a highly developed art of this kind where the number of available shapes for reflectors is obviously limited, it would not require invention to select a shallow conical form and apply to it a perfectly well known and obvious expedient to avoid an unpleasantly bright spot where the lamp comes close to it. There are, however, some features of this case which make it worth while to consider the question a little more at length. These features are a rather striking record of commercial success and something about the plaintiff's

fixture, not easily definable, which makes it seem to stand out from the prior art, to which may be added the presumption of validity arising from the grant of the patent.

Commercial success is often useful evidence of invention, provided it can be shown to be the result of what was patented. This is a mechanical, not a design, patent, and I am inclined to think that the plaintiff's design, with its candid lines, its light and rather delicate form, its slender, metallic supporting rod and close-fitting socket covering, is what really sold an otherwise very efficient fixture. The plaintiff has contrived, not only to make an efficient fixture, but to make one that looks efficient and at the same time extremely attractive.

I think the plaintiff must have been aware of the difficulty which any court would have in finding invention in his combination, because at the trial, through his expert, he endeavored to develop a theory that his patent solved an acute problem which had arisen in the illuminating engineering field as a result of the increase in the power of the electric light bulbs. There was such an increase at about the time that he brought out his fixture, the 150-watt bulbs being displaced by 300 and 400-watt and even higher powered bulbs. The witness said, in effect, that in the earlier art you could get excellent results with almost any kind of bowl (he selected a hemisphere for example) provided you kept the light source rather high. The light diffused to the ceiling would not be diminished by cross reflections, as it would if the bulb was located deep in the bowl, and of course the light transmitted through the bowl would be practically uniform because the bulb was equidistant from it at all points.

When the bulbs were increased in power, the area of the light source (the filaments) was extended vertically, thus upsetting the balance of angles and dimensions, and making alterations of design necessary to prevent direct light from reaching the eye. If, to meet this difficulty, the sides of the bowl are extended upward (making it more than a hemisphere) a good deal of diffused light will be lost by cross reflections in the bowl and by interference by the bulb and socket. So, instead, the socket cover was lengthened and the bowl made shallower, which meant bringing the bottom closer to the bulb, and

producing a spot of rather intense transmitted light on the bowl. The plaintiff met this difficulty by thickening the bowl at that point.

In other words, when the use of larger and stronger bulbs indicated the adoption of shallow bowls so as not to lose efficiency by re-reflection and absorption of light in the bowl, the plaintiff made the bowl thicker where it was close to the light source in order to keep its brightness uniform. Regardless of the great amount of other matter which the plaintiff has introduced, his case for patentability is rested upon the proposition that this was an inventive step. (See Note.) I am of the opinion that, in view of the art as known, it was a step which involved nothing more than the adoption of a very well known, almost obvious, expedient to meet a condition which plainly demanded it. I do not mean to say that I find that the problem or "dilemma" as stated by the plaintiff's expert did in fact exist, or that, in order to deal with the bigger light bulbs, it was necessary to do more than lengthen the socket cover. I am not at all clear that the introduction of shallow bowls was not an entirely unrelated improvement having nothing to do with the increase in the size of the lights. I have merely attempted to state the plaintiff's theory of the invention as I understand it, and have concluded that, even accepting it at its face value, invention cannot be found.

A great deal of the evidence had to do with the tests of performance of the plaintiff's, the defendant's, and various prior art, fixtures. The value of this evidence can easily be overestimated unless certain considerations, which will be briefly mentioned, are clearly kept in mind, and there are one or two other matters which may also be stated as having a bearing upon the finding of want of invention which has been made.

First, while efficiency is a very important matter, efficiency must to some extent be subordinated to other considerations. From the standpoint of the amount of light delivered, a bare light bulb would be the most efficient light possible. Obviously all these semi-indirect fixtures must stop short of maximum efficiency in order to obtain a tolerable illumination. No judgment based on efficiency tests alone would be of much value in determining the desirability of any particular light fixture. The purpose is of course

186

to get the maximum amount of light upon the ceiling, but only if it is widely diffused so as to avoid sharp contrast with the panorama and is near enough in brightness to the translucent bowl that the bowl will not be an outstanding bright spot.

Second, uniformity of the translucent bowl is also important, but all that is really required in that regard is that there should not be a bright spot on the bowl which is irritating or objectionable to the eyes. Bowls that look, and for all practical purposes are, substantially uniform in brightness show surprising variations at different points when the transmitted light is measured with the mechanical accuracy of the testing laboratory equipment.

Third, in these semi-indirect fixtures it is to be remembered that what really counts is the light thrown on the ceiling. As has been said, part of this is not reflected at all, but shines directly from the light source. Probably a larger part is reflected from the bowl, but by diffused, not by specular reflection. The specular reflection is not more than three to five per cent of the light. Unless this is remembered one will get an entirely wrong impression from the patent drawing. The specularly reflected rays (15) which it shows are really negligible. The plaintiff's expert's Fig. 2 of Exhibit P–19 gives a more correct picture. The diffused rays will not differ greatly with different shapes of bowl since they are subsurface reflections. That is the principal reason why the plaintiff must and does concede that the cone shape is entirely nonfunctional. His expert's testimony upon this point is as follows: " * * * if you do not have a reentrace or covering of the shape of the bowl, the shape of the bowl does not in itself make any material difference in the character of the service, * * *" And he further testified that "if " * * * you took this (Ainsworth's cone) figure out and curved it? * * * It would not make any practical difference there; it would make minor differences that are, after all, rather immaterial," and that the conical shape is "nonfunctional, but the flatness of the cone is functional." In other words, it seems plain that a shallow bowl of any shape, which will get unintercepted light to the ceiling without excessive bowl absorption or too much interference from the stem and bulb, will do.

Fourth, the appearance of the structure is a matter of very great importance. This hardly needs to be elaborated. The point is that it does not enter into the question of patentability, and cannot be evaluated by any sort of test. The plaintiff, who had taken design patents before, did not patent the present design because, as he testified, he considered it a mechanical patent.

II. On the issue of unfair competition, there is no question that the defendant has imitated the plaintiff's fixture. He did make a number of minor differences, the principal point being the decoration of the bowl, but the design of his structure taken as a unit—outline, dimensions, relative value of elements, everything that goes to make up the appeal to the eye—is substantially the same. Inasmuch as the ornamentation on the bowl practically disappears when the bowl is lighted up, and the other points of difference are very slight, I am quite willing to make the finding that the average customer might easily mistake the defendant's fixture for the plaintiff's.

It does not follow that, because a competitor adopts a design for the purpose of getting the benefit of whatever business advantage and trade reputation attaches to it, an intent to pass off his goods as those of the originator is to be conclusively presumed. This was the point in Arden v. Denney, 3 Cir., 99 F.2d 272. The court there said (referring to the color and arrangement of gift boxes of toilet preparations), "They [the defendants] must have observed the general trend in articles of this kind toward dainty combinations and delicate colors and desired to get the benefit of customers' buying habits which the plaintiff had already taken advantage of and may well have created or developed. All this they had the right to do." [Page 273.] In the present case I find as a fact that the defendant did not actually intend to palm off its fixtures upon the public as the plaintiff's.

The law is well settled that functional features may always be freely copied by competitors. The Denney Case quoted above was really based upon a recognition of the principle that there may be functional features, not protected against imitation, which impart no mechanical or structural advantages to the goods. "When goods are bought largely

for their aesthetic value, their features may be functional because they definitely contribute to that value and thus aid the performance of an object for which the goods are intended. Thus, the shape of a bottle or other container may be functional though a different bottle or container may hold the goods equally well. A candy box in the shape of a heart may be functional, because of its significance as a gift to a beloved one, while a box of a different shape or the form in which a ribbon is tied around the box may not be functional. Or, a distinctive printing type face may be functional though the print from a different type may be read equally well. The determination whether or not such features are functional depends upon the question of fact, whether prohibition of imitation by others will deprive the others of something which will substantially hinder them in competition. A feature is nonfunctional if, when omitted, nothing of substantial value in the goods is lost." Restatement of the Law of Torts, Chapt. 35, Sec. 742.

■ While the question is by no means free from doubt, I am of the opinion that the design of an electric lighting fixture, so far as it relates to those general features which are here imitated, is functional. For the plaintiff it can well be said that in creating his fixture, while he may not have exercised invention, he unquestionably did exercise originality and artistic sense of a high order.

It is true that the dominating distinctive feature of the plaintiff's design is the shape and proportioning of the bowl, and in Luminous Unit Co. v. Williamson & Co., D.C., 241 F. 265, it was held that the shape of a bowl in an electric lighting fixture is a nonfunctional feature. However, it is clear that the structure in that case was of considerably more elaborate design than the plaintiff's in this case, and the opinion of the court indicates that the defendant copied more than merely shape, also reproducing the "markings" and "number and style of hangers." [Page 269.]

■ It is also true that the defendant in this case committed himself to the proposition that the shape of the bowl is nonfunctional. But it is not quite fair to the defendant to leave that statement without saying that this position was taken in the part of the case which involved the operation of a mechanical patent and obviously was limited to mechanical function. I do not think that the record estops the defendant from arguing that the shape of the bowl is functional in the sense in which the Restatement of the Law defines that term.

The trouble is that, given an efficient fixture, the design is what really sells it, and the defendant could not possibly, in my judgment, produce something notably different from the plaintiff's without losing something of very substantial value and affecting the performance in the sense that presenting an attractive appearance is part of its performance—as it undoubtedly is. In other words, the ensemble is so distinctive that any combination of shallow conical bowl, slender rod and plain, long socket cover is bound to be confusingly similar to the plaintiff's unless it is somehow defaced. You simply cannot take it and hang a fringe around the bowl or paint a design on it which will show up strongly when the bowl is lighted, without ruining it as a sales proposition. That means that the defendant or anyone else who wants to make a mechanically good fixture designed on simple, modern lines is practically driven to the shallow hemisphere or dish shape, the rather awkward helmet shape, or something else not nearly as satisfactory as the shallow cone. That, in turn, means that the plaintiff really gets the monopoly which he is asking under his patent.

The facts stated in the foregoing opinion may be taken as special findings of fact. The following conclusions of law are separately stated:

1. All the claims of the patent in suit, U. S. No. 1,957,192, are invalid for the reason that they show no inventive step or patentable novelty over the prior art.

2. All the claims, if valid, would be infringed by the accused structure.

3. The plaintiff is not entitled to relief by reason of the defendant's imitation of the general appearance of his structure.

The bill may be dismissed with costs.

### NOTE.

The testimony of the expert is interesting in this regard. After stating the dilemma which was created by the large size bulbs—that of the choice between raising the edges of the bowl, thus losing efficiency, and making the bowl shallower, thus bringing the bottom close to the light and getting a bright spot of transmitted light—

he says that "Ainsworth introduced two major and one minor elements which in combination enabled us to escape the dilemma in which we are." The first major feature was the lengthening of the husk or docket cover. This, it will be noted, is not mentioned in any of the claims. The minor element was "the use of a small stem which while not perhaps in the legal sense novel in the art was certainly novel with respect to the general use in the art." This again is not mentioned in the claims, and he went on to say, " * * * it was substantially novel, but it was an element affecting appearance for all practical purposes rather than affecting the matter of performance."

This leaves the second larger feature as the only inventive step out of the "dilemma" which is even mentioned in the claim. The testimony as to that is, "The second major factor was the thickening of the bowl near the apex, or, indeed at all points where it is near the lamp. That thickening, per se, was not new, but the thickening as applied to the bowl, a translucent bowl of this general character was to the best of my knowledge and belief new." This testimony would seem to entirely justify the view stated in the above opinion that the plaintiff rests his case for patentability upon the thickening of the bowl to prevent undue brightness where the lamp comes near it.