Donald E. MARSHALL

v.

PROCTOR & GAMBLE MANUFACTURING COMPANY (a corporation), and

Proctor & Gamble Distributing Company (a corporation).

Civ. A. No. 9207.

United States District Court D. Maryland.

Feb. 17, 1959.

John D. Alexander, Baltimore, Md., Ira Milton Jones, James R. Custin, Milwaukee, Wis., for plaintiff.

William A. Grimes, Baltimore, Md., Casper W. Ooms, Chicago, Ill., for defendants.

R. DORSEY WATKINS, District Judge.

Plaintiff's complaint contains three causes of action. The first is for infringement of United States Patent 2,-724,702 issued November 22, 1955; the second for breach of confidential relationship; and the third for "False Marking and Misrepresentation in Violation of Title 15 U.S.C.[A.] section 1125a" [Lanham Act].

Defendants answered the causes of action and counterclaimed for declarations of invalidity; noninfringement; and nonviolations of confidential relationship or of the Lanham Act. Thereafter defendants moved that the third cause of action be dismissed for failure to state a claim against the defendants upon which relief can be granted.

The third cause of action, as originally filed, alleged that plaintiff is engaged in the business of licensing manufacturers of soap and machines for making soap under various patents, including the one in suit, all of which relate to improvements in soaps and detergents; that plaintiff is a consultant to manufacturers of soap, advising on methods, processes, techniques, machinery and formulations for the manufacture of soaps and detergents; and that plaintiff makes a business of licensing under the patents, and giving advice and information to clients.

Plaintiff claims to be the first to discover a commercially practicable means by which milled cake soap in the ultra-microcrystalline phase may be produced, such soap permitting extraordinarily large percentages of non-detergent emollient additives such as free fats and oils to be incorporated without adversely affecting other characteristics thereof. This had never been commercially practicable before plaintiff's discoveries, and inventions.

Plaintiff asserts that the success of his business is dependent upon public recognition of the advantages of incorporating into toilet soaps substantial percentages of emollient, and upon public acceptance of and demand for such soaps.

In September 1953 defendants put on the market with an intensive advertising campaign their "Camay" brand toilet soap containing cold cream as an emollient. By advertising and representations that Camay contained cold cream (but without any indication as to the quantity thereof), defendants * * * "intended to cause the buying public to believe that their 'Camay' toilet soap contains a sufficient amount of cold cream to produce the benefits which might be expected to accrue from the incorporation of cold cream in a toilet soap, and intended that the public should purchase and use defendants' 'Camay' toilet soap in that belief * * * The amount of cold cream incorporated in defendants' 'Camay' toilet soap is so minute as to be negligible, being less than two per cent (2%) by weight of the total cake, and is inadequate to produce any of the benefits which might reasonably be expected from the incorporation of cold cream in a toilet soap."

Plaintiff further claimed that as a result of the purchases of "Camay" in the belief that it "contains a substantial and efficacious proportion of emollient, the public will be less receptive to soaps which genuinely contain a substantial and efficacious proportion of emollient when such soaps are introduced on the market * * *." Therefore prospective clients and licensees of plaintiff have been and will be discouraged "by defendants' misrepresentations" from entering into agreements with plaintiff.

The original third count concluded with the claim that "Plaintiff has been substantially damaged by defendants' false description and representation to the effect that its 'Camay' soap contains cold cream; and defendants will continue such false description and representation, to plaintiff's further damage, unless defendants are enjoined by this Court."

In brief, plaintiff asserted that before his inventions it had not been commercially feasible to add "significant" quantities of non-detergent emollients to milled soaps; that plaintiff's inventions made possible the incorporation of "extraordinarily large percentages of non-detergent emollient additives"; that plaintiff's success depends upon public recognition of the "advantages of incorporating into toilet soaps substantial percentages of emollients"; that defendants intended to cause the buying public to believe that its soap, "Camay", advertised as containing cold cream, did contain a "sufficient amount of cold cream to produce the benefits which might be expected to accrue from the incorporation of cold cream in a toilet soap"; but that the amount of cold cream in "Camay" is negligible, and "is inadequate to produce any of the benefits which might reasonably be expected from the incorporation of cold cream in a toilet soap"; and that thereby the public will be less receptive of a soap (presumably manufactured under plaintiff's patents) containing "a substantial and efficacious proportion of emollient", if, as and when, if ever, such soap is marketed; and that such future public nonreceptivity has discouraged and will discourage the making of license agreements with plaintiff.

If, as plaintiff alleged, the public prior to his invention had no familiarity with the benefits to be derived from the incorporation of cold cream into toilet soap, the court did not see how, from the pleadings, it could be determined what the public would expect from the incorporation of an unspecified amount of cold

cream; or how the public would have any standard by which to measure satisfaction or dissatisfaction. What benefits would the public expect; and why?

Further, the court was of the opinion that the pleading did not sufficiently define the meaning and relationship of "significant"; "extraordinarily large percentages"; "substantial percentages"; "sufficient amount";[1] "benefits which might be expected"; "less receptive"; "substantial and efficacious proportion." The court therefore granted the motion to dismiss without prejudice.[2]

The court suggested that any amended third count should state specifically plaintiff's contention as to what "benefits" were and are expected by the purchasing public from the incorporation in toilet soap of "effective amounts" of cold cream; what is an "effective amount" to produce such results; what is the minimum effective amount; what is the amount capable of incorporation under plaintiff's patent; and should contain an averment that the advertising by defendants that "Camay" incorporates or includes cold cream has been relied upon by the purchasing public and has resulted in sales which otherwise would not have occurred.

The amended third count contained verbatim all of the background material previously recited. It changed "significant quantities" to "efficacious quantities"; "substantial percentages" to "efficacious amounts"; "sufficient amount" to "efficacious amount"; and "substantial and efficacious proportion" to "an efficacious amount." There was added the allegation that by their advertising and representations defendants "intended to cause the buying public to believe that their 'Camay' toilet soap contains an efficacious amount of cold cream that is, an amount of cold cream sufficient to produce some or all of the benefits which might be expected to accrue from the incorporation of cold cream in a toilet soap, as alleged in paragraph XIX[3] hereof, and defendants intended that the public should purchase and use defendants' 'Camay' toilet soap in that belief."

It was further alleged that as a result of defendants' advertising and representations, the sale of "Camay" increased substantially for several months, but after a period of two years, during which the advertising and representations continued, a "substantial proportion of the increased sales that had followed initiation of such advertising and promotion were lost. Such loss of sales resulted from the discovery by the purchasing public that 'Camay' soap produced none of the benefits which might be expected from a toilet soap containing an efficacious amount of cold cream"; and as a result, "the public will be less receptive in the future to soaps which genuinely

---

1. Plaintiff's patent referred to the incorporation of 5–15% of emollients by weight. Plaintiff contended that less than 10% would be "ineffective" to produce the expected "benefits." How the public was supposed to become aware of these data was not disclosed.

2. It therefore became unnecessary to consider defendants' contentions that in any event the Lanham Act was unavailable to plaintiff because plaintiff and defendants were not competitors, and the fact of damage to plaintiff was too remote, apart from any problem of proving amount.

3. Paragraph XIX reads as follows:
   "The advantages of incorporating a non-detergent emollient or emollients in toilet soap in efficacious quantities are:
   "(a) The mildness of the soap is im-

proved so that it offers less possibility of irritating the skin;
   "(b) The durability of the soap cake is improved with respect to long periods of immersion;
   "(c) When used as a shampoo, a toilet soap containing an efficacious proportion of emollient leaves the hair manageable and easy to groom;
   "(d) The natural oily mantle of the skin is replaced at least in part so that the skin does not feel dry after use of a toilet soap containing an efficacious proportion of emollient;
   "(e) The lather of a toilet soap containing an efficacious proportion of emollient is believed to be more penetrating so that skin-pore clogging is alleviated."
   Note particularly that paragraph XIX refers to "advantages", not "benefits."

contain an efficacious proportion of emollient when such soaps are introduced on the market," and prospective clients and licensees of plaintiff have been and will be discouraged from entering into agreements with plaintiff.

It was also alleged that about 10% of the non-detergent emollient must be added to toilet soap "in order for the emollient to be efficacious therein"; and that plaintiff's patent permits the inclusion in soaps of "as much as 15% of such non-detergent skin emollients and hair conditioners * * *."

The court initially assumed that this amendment was intended to meet the court's suggestions, and to allege (although somewhat indefinitely) that defendants' advertising and representations were intended to, and did, produce on the mind of the public the impression that "Camay" would confer upon the user the "benefits" of the "advantages" set forth in paragraph XIX.[4] Whether these "advantages" are sufficiently factual and definite to be the subject of representation—or misrepresentation—need not be determined for reasons to be stated.

This supposition was thrown in doubt by the statement in plaintiff's brief that:

"The complaint makes no allegation about what the consumer expects to get when she buys a bar of Camay soap 'containing cold cream' because it does not matter, so far as the plaintiff's cause of action is concerned, what specific advantages the consumer expects to derive from the presence of 'cold cream' in Camay. What *does* matter, and what is pleaded by paragraphs XXII through XXVI of the amended complaint, is that defendants' carefully indefinite advertising, coupled with the consumer's own knowledge and experience, leads her to expect *some*

advantages from Camay soap because of the cold cream she believes it to contain." (Plaintiff's emphasis.)

The supposition was shattered during the argument on defendants' motion to dismiss the third count as amended. Plaintiff's counsel took the position that he was trying to allege that because of defendants' emphasis on "Camay" containing *some* cold cream, the public would simply expect it to be "different." He said:

"* * * We obviously cannot plead some specific thing, some specific difference or advantage that the public expects when they read it, because we don't know exactly what goes on in the mind of the reader when he sees this advertisement. All we can say is that in a general way they expect something different in this soap or about this soap.

\* \* \* \* \* \*

"* * * The soap should be better or worse because it has cold cream in it."[5]

Plaintiff requested leave to file a second amended third count, to make it clear that plaintiff contended that as a result of defendants' advertising and representations, the public expected and was intended to expect some difference, whether beneficial or detrimental, from the inclusion of cold cream in toilet soap; that there is no difference in the effect of use of "Camay" with or without 2% of cold cream, and that the public has concluded or will conclude that the presence or absence of cold cream is immaterial, and that it will not buy cold cream soaps in the future.

In granting leave to amend as requested, the court adverted to some of the legal problems that would be present even if such amendment were made. The court suggested that even in view of the very

4. See footnote 3 for text of paragraph XIX.

5. Plaintiff's counsel insisted on the use of "difference" rather than "benefit", explaining:

"I use the term difference because I ran into a woman in the last few days who insisted that she would not buy a soap if it contained cold cream."

conservative attitude of the Maryland decisions in refusing damages for preventing the starting of a new business, the plaintiff might want to consider the substitution or addition of a new cause of action, apart from section 1125(a) of Title 15 U.S.C.A., alleging wrongful interference preventing plaintiff from entering into a new business.

The second amended third count made only two changes in the first amended third count. It struck from the allegation that defendants' advertising and representations were intended to cause the buying public to believe that "Camay" contained an efficacious amount of cold cream, that is, an amount of cold cream sufficient to produce some "or all of the benefits that might be expected to accrue from the incorporation of cold cream in a toilet soap, as alleged in paragraph XIX[6] hereof" the quoted words, and inserted in lieu thereof: "difference which will be noticeable to the consumer and by which a milled toilet soap containing cold cream will be distinguishable from a milled toilet soap which does not contain cold cream." It also changed the allegation that the amount of cold cream in "Camay" was inadequate to produce any of the benefits which might reasonably be expected from the incorporation of cold cream in a toilet soap", by substituting "differences" for "benefits."

Defendants moved for judgment on the pleadings as to the second amended third cause of action on the grounds that there is no allegation of any false description under Section 1125(a) of Title 15 U.S. C.A., or of any injury for which such section, or any law, imposes civil liability. For the reasons hereinafter set forth, the court will grant defendants' motion.

### The Section in Suit

The second amended third count is purportedly brought under U.S.C.A. Title 15, Section 1125(a) (Section 43(a) of the Lanham Act), which reads as follows:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

"*False description or representation* * * * *"

Literally, there is no false representation in the claim by defendants that "Camay" contains cold cream, for admittedly it does. Presumably the advertising that defendants' soap contains cold cream is intended to induce greater numbers of the public to purchase the soap than would otherwise do so. However, according to plaintiff's counsel, the disclosure of the incorporation of cold cream in "Camay" would discourage some portion of the public from buying the soap. It is difficult to find falsity of description or representation, or damage to the plaintiff, in the disclosure of a fact which encourages some, and discourages others.

Plaintiff claims, however, that users would expect some difference between a soap containing, and one that does not contain, cold cream; that the soap should be better or worse because it has cold cream in it. But plaintiff is unable to plead any specific difference that the public expects from reading defendants' ad-

---

6. See footnote 3.

vertisements. While claiming (paragraph XIX) that there are "advantages" in the incorporation of efficacious amounts of cold cream in soaps, plaintiff is unwilling to plead that the public will, from defendants' advertising, expect to secure the benefits of these advantages; all he is willing to do, on this third try, is to allege that they will expect "differences"; that a soap with cold cream will be better, or worse, than one without.

■ The case is not one in which the defendants are leading, or seeking to lead, the public into the belief that the defendants' product is the same as plaintiff's product (no soap manufactured under plaintiff's patents ever having been on the market). Plaintiff's position comes down to the contention that defendants are selling a cold cream soap which is inferior to what his will be if it is ever manufactured and marketed; and that the public, using defendants' product and finding it no different from soap without cold cream, will be prejudiced against all cold cream soaps; therefore defendants should be enjoined from advertising the fact that "Camay" contains cold cream, even although it does.[7] By a parity of reasoning, if some other inventor should discover a method of incorporating more than 15% of cold cream in soap, and such soap should be different from (better or worse than) plaintiff's soap, plaintiff would be unable thereafter to advertise *his* soap as containing cold cream. Perhaps under plaintiff's theory, even the possibility of an invention superior to plaintiff's should

debar both plaintiff and defendants from advertising a cold cream soap. To agree with plaintiff would mean that only the ultimately perfected article could be advertised. Perhaps even now the "automatic transmissions" of automobiles are not as fully automatic as they will be; "dry" beers may become drier; "mild" cigarettes may become milder; the "vacuum" of vacuum cleaners may become higher; "color" television may have true color; there may be less toil without "Lestoil"; and two psychiatrists may agree in court, though called by opposite sides.

The court is not prepared to hold true statements of fact to be false descriptions and representations because the thing to which they relate may in the future be improved.

### Injury under the Trademark Act giving Rise to Civil Liability

■ Under Section 1127 of U.S.C.A. Title 15 the intent of the chapter is stated to be, inter alia, "to protect persons engaged in such commerce against unfair competition." Plaintiff is not "engaged in such commerce" so far as the actual marketing of cold cream soap is involved. There is accordingly no "unfair competition" with his product; he has none in commercial production. Two possible arguments are nevertheless suggested in support of plaintiff's civil suit under Section 1125(a):

1) The language of Section 1125(a) that any person who shall use a false de-

---

7. In Federal Trade Commission Docket 4315, in the Matter of John J. Tracey Company, the Commission on April 10, 1941, approved a stipulation in a case charging "unfair and deceptive acts and practices." Advertising that respondent's soap was "English Lilac", and the use of words indicating other flower scent, modified by the word "English", were stipulated to be improper when both the soap and scents were of American origin.
The stipulation continues:
"Also the cartons and boxes in which respondent's aforesaid soap is distrib-

uted as aforesaid, have printed thereon the following:
" 'Cold Cream Soap'
" 'Cold Cream Soap—More Than a Soap—a Beauty Treatment.'
"This langauge implies that the cold cream contained in said soap gives emollient properties thereto. Two percent of the ingredients to said soap is cold cream.
"The use of said soap does produce detergent and emollient effects on the skin. By reason of this effect it is more than a soap."
No objection was interposed to the continuation of this advertising.

scription or representation as to goods which "enter into commerce * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description representation." Even plaintiff does not contend that it is sufficient for a plaintiff merely to allege "I believe I am likely to be damaged." Plaintiff recognizes that a member of the public, as such, has no right of action under this section for personal injuries based upon alleged misrepresentation, Carpenter v. Erie Railroad Company, 2 Cir., 1949, 178 F.2d 921, certiorari denied 1950, 339 U.S. 912, 70 S.Ct. 571, 94 L.Ed. 1338, rehearing denied 1950, 339 U.S. 939, 70 S.Ct. 672, 94 L.Ed. 1356 or allergy cases.[8]

2) The alleged extension of the Trademark Act beyond its original scope.

The early cases in the field of false advertising primarily regarded the concept of unfair competition as limited to cases of "palming off" defendant's goods as plaintiff's. New York & R. Cement Co. v. Coplay Cement Co., C.C.Pa.1890, 44 F. 277; American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 1900, 103 F. 281, 50 L.R.A. 609; Borden's Condensed Milk Co. v. Horlick's Malted Milk Co., D.C. Wis.1913, 206 F. 949; Armstrong Cork Co. v. Ringwalt Linoleum Works, D.C. N.J.1916, 235 F. 458, reversed and remanded on the ground that dismissal of plaintiff's bill without a hearing on the merits was improper, 3 Cir., 1917, 240 F. 1022. This limited concept of what constituted the only actionable interference with an exclusive property right was attacked by Judge Learned Hand in Ely-

Norris Safe Co. v. Mosler Safe Co., 2 Cir., 1925, 7 F.2d 603, where the emphasis was placed on fraudulent misrepresentations by the defendant that his goods had qualities which in fact were possessed solely by the goods of his competitor; and the resultant loss of customers. The Supreme Court reversed on the ground that the allegations in the complaint did not preclude the possibility that persons other than the plaintiff manufactured substantially identical articles. Apparently a monopoly by plaintiff would be necessary. Mosler Safe Co. v. Ely-Norris Safe Co., 1927, 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578—a point emphasized by plaintiff herein, and shortly to be discussed. A return to "palming off" is found in Samson Crane Co. v. Union National Sales, D.C.Mass. 1949, 87 F.Supp. 218, affirmed per curiam 1 Cir., 1950, 180 F.2d 896; Chamberlain v. Columbia Pictures Corporation, 9 Cir., 1951, 186 F.2d 923. L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 3 Cir., 1954, 214 F.2d 649, while a true case of "palming off", suggested that the Trademark Act had created a new Federal tort. This suggestion was followed in Gold Seal Company v. Weeks, D.C.D.C.1955, 129 F.Supp. 928, affirmed S. C. Johnson & Son v. Gold Seal Co., 1956, 97 U.S.App. D.C. 282, 230 F.2d 832, certiorari denied 1956, 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed.2d 50, the District Court saying (129 F. Supp. at page 940):

"In this respect Section 43(a) does create a federal statutory tort, *sui generis,* and to this extent Johnson need not show that any false description or representation was

---

8. Plaintiff recognizes that the very broad language of Section 1125(a) cannot be taken literally. For example, the language that a defendant using a "false designation of origin * * * shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin * * *" would not permit successful suit by a St. Louis shirt manufacturer, steam shovel manufacturer, lipstick manufacturer or correspondence school against a Chicago beer manufacturer who advertised his product as St. Louis beer.

Plaintiff agrees that "the party bringing such an action must, under the statute be directly and substantially injured by the misdescription or misrepresentation of which he complains; and it should be added that the injury, to be actionable under the statute, must be one which occurs in the area of commercial relations * * *. But the plaintiff in an action under 15 U.S.C. section 1125(a) need not be a direct competitor of the defendant."

willful or intentional, need not prove actual diversion of trade (palming off, so to speak), need not establish a veritable monopoly position in the industry. It means that wrongful diversion of trade resulting from false description of one's products invades that interest which an honest competitor has in fair business dealings—an interest which the courts should and will protect whether it be called that of 'property', 'quasi-property' or something else. It represents, within this area, an affirmative code of business ethics whose standards can be maintained by anyone who is or may be damaged by a violation of this segment of the code. In effect it says: you may not conduct your business in a way that unnecessarily or unfairly interferes with and injures that of another; you may not destroy the basis of genuine competition by destroying the buyer's opportunity to judge fairly between rival commodities by introducing such factors as falsely descriptive trade-marks which are capable of misinforming as to the true qualities of the competitive products." [9]

However, whether a "passing off" be necessary, or it suffices that a diversion of trade be shown, it is at least necessary that the action be one for unfair competition, in which a competitive injury is alleged.

Plaintiff attempts to counter by saying that he has a monopoly (through his patent) and therefore would have a right of action under the decision of the Supreme Court in the Mosler Safe case, supra. But to this there are several satisfactory answers.

First, plaintiff has a monopoly on his patented invention; but the second amended third count does not proceed on the basis of patent infringement. Were plaintiff permitted to claim that the advertisement of an article not covered by his patent was unfair competition with his patented product, he would unlawfully expand his patent monopoly.

■ Second, plaintiff has not put his product on the market; he alleges only a hope or expectation of licensing others, who will in the future market a soap which will then come into competition with defendants' soap. Aside from the lack of certainty that this situation will ever arise, if it did even then plaintiff's claim would not be direct, but derivative. In such cases the licensee, not the owner of the patent, is the proper party to bring suit. Ainsworth v. Gill Glass & Fixture Co., D.C.Pa.1938, 26 F.Supp. 183, affirmed 3 Cir., 1939, 106 F.2d 491, 495; Metropolis Bending Co. v. Brandwen, D.C.Pa.1948, 8 F.R.D. 296; see also, Productive Inventions, Inc. v. Trico Products Corporation, 2 Cir., 1955, 224 F.2d 678, certiorari denied 1956, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818.

The necessity for such limitation is apparent. If plaintiff, whose only damage on the pleadings would be indirect and derivative, could recover under Section 1125(a), why could not a supplier of cold cream, who would have, or would like to have, supplied plaintiff's licensees, if any; or those who might have supplied the raw materials to such would-be vendors of cold cream; or the manufacturers of containers for raw materials, cold creams, and soaps?

For the above reasons the second amended third count must be dismissed. It therefore becomes unnecessary to consider whether in any event one prevented from embarking on a new business could recover damages for anticipated profits. Central Coal & Coke Co. v. Hartman, 8 Cir., 1901, 111 F. 96; Ellerson v. Grove, 4 Cir., 1930, 44 F.2d 493; Greenwood

9. Chief Judge Thomsen in Bechik Products, Inc. v. Federal Silk Mills, Inc., D.C.Md.1955, 135 F.Supp. 570, although emphasizing the necessity of a passing off of the goods as those of another, recognized the possible conflict in authorities, but found it unnecessary to attempt a reconciliation, as the element of falsity was absent from the case before him. (135 F.Supp. at page 578).

County v. Duke Power Co., 4 Cir., 1939, 107 F.2d 484, 131 A.L.R. 870, certiorari denied 1940, 309 U.S. 667, 60 S.Ct. 608, 84 L.Ed. 1014; United States v. Griffith, Gornall & Carman, Inc., 10 Cir., 1954, 210 F.2d 11.

The second amended third count is dismissed without leave further to amend.