Frank J. SCODARI et al., Plaintiffs,

v.

Donald C. ALEXANDER, Commissioner of Internal Revenue Service, and William E. Simon, Secretary of the Treasury, Defendants.

No. 75 C 813.

United States District Court, E.D. New York.

Jan. 15, 1976.

Jack B. Solerwitz, Mineola, N. Y., for plaintiffs.

David G. Trager, U. S. Atty., by Cyril Hyman, Asst. U. S. Atty., John J. Mc-Carthy, Louis J. Lombardo, Richard F. Mitchel, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## OPINION AND ORDER

PLATT, District Judge.

By order to show cause filed October 28, 1975, plaintiffs have moved to amend their complaint to add two additional parties. The issues raised by the proposed amendment have required the Court to consider the government's motion to dismiss filed June 3, 1975. Consideration of that motion was earlier temporarily suspended on consent of all parties. The Court believes that plaintiffs lack standing to bring this action and therefore grants defendants' motion for dismissal. Since the individuals whom plaintiffs attempt to add as parties cannot maintain this action either, the proposed amendment does not alter the Court's conclusions.

## I

### FACTS

Plaintiffs are six special criminal investigatory agents in the Intelligence Division of the Internal Revenue Service. They seek a permanent injunction and a Writ of Mandamus to prevent their superiors: a) from forcing plaintiffs to give up the names of their confidential informants, b) from revealing the identities of informants to anyone beyond the persons under whom plaintiffs serve, and c) from sending agents of the Internal Revenue Service, other than those who have been in communication with informants, to talk to informants. Plaintiffs have moved to join a

seventh agent and one of the Service's confidential informants as additional plaintiffs.

The gist of plaintiffs' complaint is that their superiors in the Internal Revenue Service have ordered them to submit the names of their informants or face disciplinary action. The stated purposes of the IRS directive were to allow the Internal Audit Division of the IRS to determine whether money paid to informants actually reached them, whether the informants were doing anything illegal for their money, and whether the expenditures were worthwhile to the IRS. Plaintiffs allege in the complaint that they will suffer irreparable injury if they are forced to reveal informants' identities in that they will no longer be able to function effectively in a professional capacity; they will be cut off from sources of information; if the identities are disclosed they will suffer ridicule and loss of respect of members of other law enforcement agencies who have supplied plaintiffs with information, and with whom plaintiffs may be required to work in the future; they will suffer a great loss of social esteem in their communities because they would be required to provide the names of informants who are friends and neighbors who wittingly or unwittingly have supplied plaintiffs with information used in investigations; they will suffer injury to their own personal mental well-being in that they would worry about the physical well-being of their confidential informants; and they would suffer injury to their reputations in that they have promised that at all times these informants' names would remain confidential.

Plaintiffs further claim that disclosure of their informants' identities would endanger the lives, the physical well-being, or the economic well-being of the informants. They also allege injury to the public interest in that disclosure would render plaintiffs ineffective in their work of protecting the public against organized crime, political corruption and narcotics trafficking.

This dispute over revealing informants' identities arose when the Internal Revenue Service in April of last year adopted an internal policy requiring agents to turn over information about informants to superiors. Plaintiffs believe that this policy greatly increases the chances that informants' identities will be revealed.[1]

When in the early stages of this litigation plaintiffs moved to enjoin the IRS from implementing the policy, and the government cross-moved for dismissal, the parties agreed before this Court 1) that the government would during the pendency of this litigation disclose only the identities of those who operated as informants after the date of the change in IRS policy, and 2) that the motion to dismiss would be temporarily left undecided.

Plaintiffs have in connection with their motion for leave to amend in effect asserted that the government has broken its agreement. It therefore has become necessary for the Court to decide the requests for preliminary injunction and for dismissal.

The government has advanced a number of grounds in its motion to dismiss this action, including absence of subject matter jurisdiction, lack of standing, sovereign immunity, and failure to state a claim upon which relief can be granted. We will consider only the standing question.

## II

## PLAINTIFFS LACK STANDING TO BRING THIS SUIT IN THEIR OWN INTERESTS

The test this Court must apply to determine whether plaintiffs have stand-

---

1. It should be noted that this litigation concerns only those who operated as informants exclusively before this policy change, since those operating as informants afterwards could not rely on the older policy of stricter confidentiality.

ing to bring a suit challenging agency action was first articulated in *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). There the Supreme Court through Mr. Justice Douglas granted standing to a seller of data processing services to challenge a ruling by the Comptroller of the Currency that national banks should be permitted to make data processing services available to other banks and to bank customers. The Court rejected the "legal interest" test for standing, ruling that the question should be

> "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise . . . [and] whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." 397 U.S. at 152–53, 90 S.Ct. at 829–830.

We proceed to consider plaintiffs' position in accordance with this two-part test.

A. Plaintiffs do not allege "Injury in Fact"

■■■ Before these plaintiffs can be said to have standing under *Data Processing* they must allege that the Internal Revenue Service has caused them an injury in fact, which is to say they must meet the case or controversy requirements of Article III. The injury may be aesthetic, conservational or recreational, as well as economic, see *Association of Data Processing Service Organizations v. Camp, supra*; *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). But to be an injury "in fact" it must still have substance and not be completely imaginary or subjective. The Supreme Court pointed out in 1973 that

> " 'Injury in fact' . . . serves to distinguish a person with a direct stake in the outcome of a litigation—

even though small—from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 2417, 37 L.Ed.2d 254 (1973).

Individuals cannot be accorded standing "to do no more than vindicate their own value preferences through the judicial process." *Sierra Club v. Morton, supra*, 405 U.S. at p. 740, 92 S.Ct. at p. 1369. To allow individuals to maintain such suits would be inconsistent with Article III in that the Court would not insure that the litigants would "have the personal stake and interest that impart the necessary concrete adverseness" to the case. *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). As the Supreme Court held in one of its most recent pronouncements on standing,

> "Concrete injury, whether actual or threatened, is that indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution. It adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action challenged as unlawful. This personal stake is what the Court has consistently held enables a complainant authoritatively to present to a court a complete perspective upon the adverse consequences flowing from the specific set of facts undergirding his grievance. Such authoritative presentations are an integral part of the judicial process, for a court must rely on the parties' treatment of the facts and claims before it to develop its rules of law. Only concrete injury presents the factual context within which a court, aided by parties who argue within the context, is capable of making decisions.

> ☙  ☙  ☙  ☙  ☙  ☙

"[T]he discrete factual context within which the concrete injury occurred or is threatened insures the framing of relief no more broad than required by the precise facts to which the court's ruling would be applied.

\*  \*  \*  \*  \*  \*

"To permit a complainant who has no concrete injury to require a court to rule on important constitutional issues in the abstract would create the potential for abuse of the judicial process, distort the role of the Judiciary in its relationship to the Executive and the Legislature and open the Judiciary to an arguable charge of providing "government by injunction." *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 220–22, 94 S.Ct. 2925, 2932–2933, 41 L.Ed.2d 706 (1974).

Plaintiffs' alleged injuries are not the type which impart the necessary concrete adverseness to a case. They are instead entirely subjective. Were it enough that a litigant feel concern about a government action, even concern so severe as to cause "injury to his own personal mental well-being", then the Sierra Club would certainly never have been denied standing in *Sierra Club v. Morton*; nor would plaintiffs have been dismissed in *Warth v. Seldin,* 422 U.S. 490, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975); see also *United States v. Students Challenging Regulatory Agency Procedures,* 412 U.S. at p. 689 n. 14, 93 S.Ct. 2405.

Likewise the purported loss of esteem in the eyes of professional or social associates cannot be considered by this Court as the type of concrete injury which qualifies a litigant as one meeting the case or controversy requirements of Article III. And further, the alleged harm of loss of esteem is too much attenuated, too far removed from the government action, to constitute an "injury in fact", see *Warth v. Seldin,* 422 U.S. 490, 504–07, 508–09, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *S. v. D.,* 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536

(1973); *Warth v. Seldin,* 495 F.2d 1187, 1191 (2d Cir. 1974). For the "injury" here is caused, if it exists, by independent reactions of associates of plaintiffs to decisions of plaintiffs' superiors. And indeed, those reactions are hardly inevitable, especially considering plaintiffs' opposition to those decisions and plaintiffs' lack of control over them.

█ Insofar as plaintiffs allege that they will function less effectively as agents, they do not allege any injury to themselves, but rather an injury to the United States. And plaintiffs specifically advert to an "injury to the public interest" that would result from their decreased effectiveness. But it is well settled that one does not gain standing by asserting an injury to the general body public, *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Ex parte Levitt,* 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937); *Massachusetts v. Mellon,* 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); *Newman v. United States ex rel. Frizzell,* 238 U.S. 537, 35 S.Ct. 881, 59 L.Ed. 1446 (1915).

█ Nor are plaintiffs aided by the reference in their complaint to possible injury to informants. It is true that at times, as the Court will discuss in Section III below, a litigant is given standing to assert another's rights. But that another is injured cannot satisfy the "injury in fact" requirement of Article III and *Data Processing,* which is only met by personal injury, *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). And even one alleging injury to another must meet this Article III standard.

█ In short, plaintiffs have alleged no "injury in fact", and must therefore be considered without standing

to sue in accordance with the rule of *Association of Data Processing Service Organizations, Inc. v. Camp* and the provisions of Article III.[2]

### B. Plaintiffs Are Not Arguably Within the Zone of Interests of the Regulation Whose Protection They Invoke

■ Plaintiffs fail to meet the requirements of the second half of the *Data Processing* test as well as those of the first half. The latter portion requires that plaintiffs be arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. This requirement, unlike the "injury in fact" requirement, is not mandated by the Constitution. It is instead a judicial rule of self-restraint, see *Warth v. Seldin,* 422 U.S. at pp. 499–500, 95 S.Ct. 2197.

We assume without deciding that internal administrative regulations can also serve to establish a relevant zone of interests since an agency may be bound by its regulations as well as by statute or constitutional provision, see *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S. Ct. 968, 3 L.Ed.2d 1012 (1959); *Hammond v. Lenfest,* 398 F.2d 705 (2d Cir. 1968).

■ According to an affidavit sworn to by two IRS agents on June 12, 1975, the regulations pertinent to disclosure of informants' identities are IRS Policy Statement P–1–190, approved in August 1962, and three sections from two Internal Revenue Manuals, all three of which have been in effect at least since April, 1971. Those regulations are as follows:

P–1–190

When a confidential relationship exists between the Service and an informant, the informant shall not be identified to unauthorized persons without his consent. Communications and documents concerning specific confidential informants shall be handled so that they will be seen only by authorized persons who "need-to-know" the information contained therein. Releases of information concerning use of confidential informants and payments of rewards may not contain any information or leads as to the identity of an informant.

Internal Revenue Manual § 9371.1 Security of Informants' Communications

(1) Correspondence received from informants at the district, service center, and National Office levels shall be given special attention. As soon as such correspondence is recognized by mail classifiers or other employees as informants' communications, it shall be placed in sealed envelopes and routed to Intelligence with instructions "To be opened only in the Intelligence Division." Such correspondence received in Appellate Branch Offices will be so forwarded to Intelligence at the district office served by the Appellate office. These same precautions shall also apply when claims for reward and any other communications which identify informants are transmitted to Intelligence.

(2) The routing to other divisions of informant communications shall be accomplished by Intelligence either by transmitting such communications in sealed envelopes bearing the instructions "To be opened by addressee only" or by hand-carrying the material to the appropriate division depending upon which mode of transmission

---

**2.** To say plaintiffs are not "injured in fact" is not to say that they have no interest in the case, or that they or their counsel would necesarily fail to prosecute the complaint diligently. Such considerations do not, and

cannot, affect decision of standing questions, *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 225–226, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *Sierra Club v. Morton,* 405 U.S. at p. 739, 92 S.Ct. 1361.

is more convenient for the local offices concerned. These same security provisions shall apply to the transmission of claims for reward and any reports, memorandums, or other documents which identify informants.

(3) The security provisions described in paragraphs (1) and (2) above shall also apply to the transmission to Intelligence of memorandums of oral interview with informants by all Service employees who conduct such interviews.

(4) In order to maintain maximum security, informant communications, claims for reward, claim for reward reports, index files, suspense files and any other reports, memorandums or documents which identify informants, shall be protected in accordance with Exhibit 300–7 of IRM 1(16)41, Physical and Document Security Handbook. Access to such cabinets should be limited to the person or persons responsible for the security of the aforementioned documents. The identity of informants shall not be disclosed to any Service officials or employees except on a "Need to know" basis in the performance of their official duties. Personnel to whom the identity of informants becomes known or who receive information which identifies an informant are required to treat such information as highly confidential and to exercise the same aforementioned security precautions relative thereto as those individuals primarily responsible.

Internal Revenue Manual § 9373.1
Informants

(1) The source of information when furnished by informants or other confidential sources, identity of any informants, and methods of obtaining information will not be divulged to the taxpayer under investigation or unauthorized persons.

(4) Every effort should be made to determine the informant's true identity and address. It is not essential, however, that the informant sign his true name to a receipt. His identity will be kept confidential, and will not be disclosed to unauthorized persons. When deemed essential to protect the identity of an informant, or when the Government's interest will be served, the informant may use an assumed name, provided, however, his true name and address, if known, are recorded in a file of a confidential nature in the district office for association with his assumed name. If the actual name cannot be used, a numerical identification system may be employed (except on a claim for reward), such as, "Confidential Informant No. ———," with the number prefixed by the symbol for the district office.

(5) In accordance with policy statement P–1–190, confidential informants will not be used as witnesses, placed in a position where they might become witnesses, or otherwise identified in court, without their consent; and that identities of such informants shall not be revealed publicly, or to persons not entitled to such information. Normally superior officers will not have occasion to inquire as to the identities of informants, although they have a right to do so. Superior officers should exercise sound discretion in requiring the identities of informants, and unless compelling circumstances exist, such inquiries will be limited to instances wherein paid informants are involved or the special agent's integrity is at issue. When required by his superior, the special agent will disclose to such officer the identities of his informants and the substance of any information he may have received. The superior officer must take all precaution necessary to protect the sources of information. Special agents are not authorized to assure informants that their identities will not be disclosed to superior officers.

Internal Revenue Manual 9900, Handbook for Special Agents, § 232.23 Protection of Informants.

(1) During Investigations—Communications of confidential informants are based on the informant's trust that his identity will not be disclosed and that he will not be harmed physically, economically or otherwise because of his action in furnishing information to the Government. The protection of confidential informants, therefore, is absolutely essential in enforcement activities. Special agents will not divulge either the identity of the informant or the existence of a confidential informant in the case to anyone other than authorized persons. To provide maximum security regarding their identity and existence, confidential informants will not be used as witnesses, placed in a position where they might become witnesses, or unnecessarily identified in court without their consent. Special agents therefore, should obtain evidence from other sources to the extent that it is unnecessary for unauthorized persons to know that an informant has been involved in the case. Communications of confidential informants should not be attached to income tax returns, associated with workpapers, or included in the exhibits submitted with a report. Further precautions concerning the treatment of confidential sources of information in reports is set forth in 533.1:(1)(e).

These regulations clearly set forth the responsibilities and rights of the government, and they quite arguably are intended to benefit and to lend protection to informants as well. But the regulations neither explicitly nor implicitly protect agents of the Internal Revenue Service. Indeed, one of the few references to Special Agents makes it clear that they are *not* authorized to assure informants that identities will not be disclosed to superior officers, see Internal Revenue Manual § 9373.1(5), *supra*. Plaintiffs therefore do not meet the second requirement of the *Data Processing* standing test.

The Court is aware in reaching this conclusion of the rather relaxed interpretation sometimes applied to the "arguably protected" language of *Data Processing*. The Court of Appeals for the District of Columbia, most notably, has gone so far as to suggest that the intent to protect plaintiff's interest may be quite questionable indeed:

"Standing need not be founded on a rock; a pebble or even a cobweb may do." *New Jersey Chapter Incorporated of American Physical Therapy Ass'n, Inc. v. Prudential Life Insurance Co. of America*, 164 U.S.App.D.C. 40, 502 F.2d 500, 504 (1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1444, 43 L.Ed.2d 762 (1975).

See *National Automatic Laundry and Cleaning Council v. Shultz*, 143 U.S. App.D.C. 274, 443 F.2d 689 (1971). The *New Jersey Chapter* case was brought by an association of physical therapists whose members frequently contracted to give services to health institutions that provided care to patients under the Medicare Act. Prudential Insurance, which had been designated a fiscal intermediary between the government and the institutions, set standards for the institutions to follow in contracting with persons like plaintiffs' members who provide services to the institutions. The Medicare Act appears to protect the elderly and as well the institutions providing them with services, but does not appear to protect or regulate individuals such as therapists who contract with health agencies. The Court nevertheless held the standing question to be a "close and difficult" one, and passed it to consider the merits of plaintiff's claim.

The Second Circuit has, however, set a stricter standard in its interpretations of *Data Processing*. For example, in *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686 (2d Cir.), *cert. denied*, 404 U.S. 1004, 92 S.Ct. 559, 30 L. Ed.2d 557 (1971), it was ruled that consumers, unlike tradesmen, have no standing to sue under the Lanham

Trade-Mark Act for damages resulting from alleged advertising misrepresentations. The Court held that consumers' interests were not within the zone of interests protected by the Act despite arguments to the contrary by plaintiffs which were not and hardly could have been treated as frivolous. See also *Independent Investor Protective League v. SEC*, 495 F.2d 311 (2d Cir. 1974); *Acevedo v. Nassau County, New York*, 500 F.2d 1078 (2d Cir. 1974).

■ The conclusion this Court reaches after a review of the Supreme Court cases and the cases in this Circuit interpreting the second *Data Processing* requirement is that a plaintiff to meet that latter requirement must show, not just an interest in the subject area of a regulation, but also that the regulation was adopted with an intent to benefit or establish rights for him and others like him.[3] See also *Warth v. Seldin*, 422 U. S. at 500, 95 S.Ct. 2197. While it cannot be denied that plaintiffs are interested in the disclosure of informants' identities, plaintiffs have not given this Court any reason whatsoever to believe that one of the policies underlying the promulgation of the IRS regulations was the protection or establishment of an interest of agents. It must therefore be held that plaintiffs have not fulfilled the second *Data Processing* requirement any more than the first.

## III

## PLAINTIFFS LACK STANDING TO BRING THIS SUIT ON BEHALF OF OTHERS

■ The general rule is that one lacks standing to maintain a lawsuit to protect the rights of others. But "[g]eneralizations about standing to sue are largely worthless as such," *Asso-*

*ciation of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). In *Barrows v. Jackson*, 346 U. S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), the Supreme Court in effect refused to require fulfillment of the second, court-imposed standing rule that one who admittedly suffers injury in fact can only assert rights granted to *him* by a relevant constitutional or statutory provision. In *Barrows*, a white sold a house to a black and thereby violated a racially restrictive housing covenant. He was sued for damages. The possible damage award constituted injury in fact to him, but he could only contest that injury by asserting that the constitutional rights of blacks under the Fourteenth Amendment would be violated if a State court enforced the covenant. The Supreme Court noted that to deny the white seller standing would make it difficult for blacks to find willing sellers of homes in restricted areas and would allow State action through enforcement of damage judgments to subvert the holding of *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). And the Court also pointed out that "it would be difficult if not impossible for the persons whose rights are asserted to present their grievance before any court." 346 U.S. at p. 257, 73 S.Ct. at p. 1035. Under those circumstances, the white was permitted to assert the Fourteenth Amendment rights of blacks. See also *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L. Ed.2d 524 (1960); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

■ Plaintiffs in this case have alleged that very real injury to informants will follow revelation of their identities. But for the reasons outlined in

---

3. It is true that the *Data Processing* language requires that plaintiffs' interest be within the zone of interests to be "protected or *regulated*." And it is true that *agents* are "regulated" by the provisions in question. But the supposed *interest* of agents in confidentiality was not protected or regulated by those provisions, and it is that interest which must be benefited or established if the *Data Processing* test is to be met.

Part II above, plaintiffs are not themselves injured in fact. The Court in *Barrows* explicitly refrained from undercutting the Article III "case" or "controversy" requirement, i. e., the requirement that a plaintiff must demonstrate injury in fact to *himself*. Further, plaintiffs have shown no reason, and the Court knows of none, why the informants themselves cannot challenge the Internal Revenue Service actions forming the basis for plaintiffs' complaint. The absence of injury in fact and the possibility that the informants could themselves prosecute an action distinguish this case from *Barrows* and prevent plaintiffs from litigating to protect the rights of others.

## IV

### MOTION TO AMEND

■ Having decided that plaintiffs lack standing, the Court will now determine whether the proposed amendments to the complaint affect defendants' motion to dismiss.

The proposed addition of another Internal Revenue Service Agent, Mr. Jaffe, does not alter the Court's conclusions. Mr. Jaffe stands in the same position as his fellow agents.

But plaintiffs also seek to add one "T.W. 24", an informant, as an additional plaintiff. T.W. 24, in an affirmation signed November 13, 1975, claims that officers of the Internal Revenue Service, including defendant Alexander, disclosed at a press conference enough facts about his activities to reveal his identity. In the proposed amendment to the complaint, T.W. 24 asks $10,000,000 for damages resulting from violation of his personal right of confidentiality and from breach of an implied contract between himself and the Internal Revenue Service.

■ At first blush, T.W. 24 seems to meet the requirements of *Data Processing* and to have standing to contest the agency action alleged in the complaint, and he may be able to bring suit in the wake of the IRS actions of which he complains. (But *cf: Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) ). However, in this case, T.W. 24 has attempted to bring his suit before the wrong court. The provisions of 28 U.S.C. § 1491 provide that the Court of Claims has jurisdiction over suits founded upon implied contracts with the United States. And 28 U.S.C. § 1346 provides for concurrent district court jurisdiction only if the claim on an implied contract is for an amount less than $10,000. T.W. 24's claim speaks in contract; his prayer is for far more than $10,000; he must seek relief in the Court of Claims.

The Court further notes that T.W. 24 loses little as a consequence of a determination that he must proceed in another court. He is now seeking leave to join an action, and he is not seriously injured by a requirement that he begin his own action instead.

The Court concludes that the proposed amendments to plaintiffs' complaint provide no reason for a change in earlier conclusions as to whether this action may be maintained.

## V

### CONCLUSION

Plaintiffs' motions for leave to amend and for a preliminary injunction are denied. Defendants' motion to dismiss is granted on the ground that plaintiffs lack standing to maintain this action.

So ordered.